**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>      **v.**<br><br>ROBERT KROP,<br><br>           **Defendant.** | | **Case No. 1:24-cr-00174-SAG** |

**GOVERNMENT'S REPLY BRIEF IN SUPPORT OF ITS**
**MOTION IN LIMINE NO. 1, ECF NO. 103**

The United States of America, by its undersigned counsel, hereby responds in opposition to the Defendant's Motion *in limine*, filed on August 19, 2024.  ECF 33.  Defendant's Motion contains 11 sections, that challenge a variety of issues and items of evidence.

The parties have an agreement that the following sections are moot since the Government does not intend to introduce the following as evidence in the trial:

    a.  **Section I**—The Government does not intend to admit any evidence regarding bad acts or extraneous unadjudicated offenses.  Therefore, Section I is moot.  Furthermore, the Government will continue to comply with its *Brady* and *Giglio* disclosures.

    b.  **Section III**—There has been no out of court identification made of the Defendant in this case.  This issue is moot.

    c.  **Sections IV** and **V**—The  Government does not intend to elicit any testimony regarding the Defendant's post-arrest silence and/or any conversations between the Defendant and his attorney.

    d.  **Section VI**—The Government has provided defense counsel with the *curriculum vitae* of both its expert witnesses.  The parties will have to otherwise litigate the testimony of the Government's witnesses.

    e.  **Section VII**—The parties agree that most of the issues raised in this section regarding the interviews, reports, or statements of Government witnesses are moot as the Government does not intend to introduce the reports of these witnesses into evidence.  The Government does, however, reserve the ability to refresh the recollection of a witness if necessary.  The Government will address

in this response: the e-mails obtained from the Frederick County Sheriff's Office, ATF Forms 2, 3, 6, 6A and the law letters, the business records of TMGN, which include materials provided on a USB by N.A., Sheriff Jenkins' e-mail records, and the ATF evidence log, ATF photo log, the ATF photos of sized evidence, and the ATF photos from the search and seizure warrant.

    f.   **Sections X** and **XI**—The Government will not admit any grand jury testimony, therefore the parties agree this matter is moot.   The Government does reserve the ability to use transcripts to refresh the recollection of a witness, if necessary. Lastly, the Government does not intend to introduce any statements by Stephanie Krop and therefore, the parties agree that this matter is also moot.

## II.    Statement of the Defendant

Defendant Krop moves to exclude the statement he gave to law enforcement on May 25, 2022, based on (1) general admissibility, (2) that the statement was somehow attorney-client privileged communications, (3) that the statement was taken in violation of *Miranda* and relatedly that the statement was "extracted" from the Defendant by promises, fraud, or threats, (4) that the statement by the Defendant is more prejudicial than probative, in violation of Fed. R. Evid. 403. ECF 33, at p.4.  Most of these arguments were previously made in defense counsel's Omnibus Motion, filed on May 31, 2023, which included a motion to suppress the same statement made by the Defendant to ATF.  *United States v. Robert Krop*, SAG 23-0123 ("Krop I"), ECF 20.  The Government opposed that motion on June 14, 2023.  Krop I, ECF 22.  On July 18, 2023, the Court held a Motions hearing on several issues raised by both defendants Krop and Jenkins but also included oral argument and testimony from SA Jessica Woodin, ATF, related to the motion to suppress.  That same day, the Court denied the Defendant's Motion to Suppress.  Krop I, ECF 40. The Government adopts the arguments it made during the July 18, 2023 hearing, and its initial briefing in Krop I, ECF 22.  The Government, will still, however briefly address the suppression issues in this response as well.

On May 25, 2022, three agents with the ATF interviewed Robert Krop at his place of business in Frederick, Maryland.  Mr. Krop agreed to speak with the agents.  Mr. Daniel Cox, counsel for Mr. Krop, was not present.  During the interview, Mr. Krop was advised of the fact that a search warrant was being executed at his business, the Machine Gun Nest, by the interviewing agents.  As was previously determined by this Court, Mr. Krop's statement was given voluntarily.  The agents questioned him directly about the facts underlying this indictment—obtaining post-1986 machineguns through use of law letters signed by the Frederick County Sheriff.  There was also discussion specifically about the demonstration of machineguns.   When he stated that he did not want to speak further with agents, they promptly ended the interview. There was no attorney present during this interview and therefore there can be no attorney-client communications to preclude in this instance. *See* Gov. Exh. 1.

The Government first addresses the admissibility of the Defendant's statement.  First, the statement is admissible as non-hearsay as it is a statement "offered against an opposing party and: (A) was made by the party in an individual or representative capacity…"  Fed. R. Evid. 801(d)(2). The Defendant's statement is clearly admissible as the statement of a party-opponent.   The statement further is one relevant to the issues being litigated by the parties.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  The case *sub judice* centers on the Defendant's use of law letters, signed by the Frederick County Sheriff, to obtain machine guns.  The Defendant's statements to the ATF regarding what occurred at the Machine Gun Nest, his involvement with the law letters, and what machine guns were obtained, are highly relevant to the case at hand.  Furthermore, these statements by the Defendant are in no way more prejudicial than probative.  The Defendant makes no argument as to how or

why these statements or prejudicial; just states that they are. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In this situation, the Defendant's statement is not one that presents any type of unfair prejudice to the Defendant.

Lastly, "The familiar Miranda warnings are required for the '*in-custody interrogation* of persons suspected or accused of crime.' " *United States v. Leggette*, 57 F.4th 406, 410 (4th Cir. 2023) *quoting Miranda v. Arizona*, 384 U.S. 436, 467 (1966) (emphasis added). But so long as a defendant is not "in custody," then statements made during an interrogation remain admissible, even if the defendant were not given Miranda warnings. *Leggette*, 57 F.4th at 410. As the Fourth Circuit explained in *Leggette*:

> "An individual is in custody for Miranda purposes when, under the totality of the circumstances, 'a suspect's freedom of action is curtailed to a degree associated with formal arrest.' " *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) (*quoting Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). This is an objective inquiry. *J. D. B. v. North Carolina*, 564 U.S. 261, 270–71, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011); *see also Parker*, 262 F.3d at 419 ("Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or of the person being questioned, but depend instead [on] the objective circumstances of the interrogation.").
>
> A court asks two questions when determining whether a suspect's "freedom of action is curtailed to a degree associated with a formal arrest." *See Parker*, 262 F.3d at 419. "[T]he initial step," *Howes v. Fields*, 565 U.S. 499, 509, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012), is to ask "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Pressley*, 990 F.3d 383, 388 (4th Cir. 2021) (*quoting United States v. Hashime*, 734 F.3d 278, 282–83 (4th Cir. 2013)); *Keohane*, 516 U.S. at 112, 116 S.Ct. 457 (describing as "essential" to a custody determination the question of "would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave"). But this is just the first step. *See Maryland v. Shatzer*, 559 U.S. 98, 112, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010) ("Our cases make clear ... that the freedom-of-movement test identifies only a necessary and not a sufficient

condition for *Miranda* custody.") If a reasonable person would not have felt at liberty to leave, then a court must still ask "the additional question [of] whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes*, 565 U.S. at 509, 132 S.Ct. 1181; *see also United States v. Gardner*, 823 F.3d 793, 801 (4th Cir. 2016) (rejecting custody because the questioning was not "the functional equivalent of a 'stationhouse interrogation' ").

57 F.4th at 410. In this case, the answer to both questions is no. The interview of Defendant Krop was audio recorded. A copy of the recording was previously admitted as Gov. Exh. 1 at the Motions Hearing. In addition, a summary of the interview was prepared by the ATF and is attached as Gov. Exh. 2. As the summary plainly makes clear, Krop voluntarily agreed to be interviewed on May 25, 2022 after law enforcement requested such an interview. The interview occurred at a conference room at his real estate business. He ultimately terminated the interview when he concluded he wanted to consult with a lawyer. Nothing about the facts of the interview support the conclusion that his freedom of action was curtailed in any way, let alone "to a degree associated with formal arrest." *Parker*, 262 F.3d at 419. Nor was the interview of Krop in a conference room at his real estate business, which he ultimately ended, an "environment [that] present[ed] the same inherently coercive pressures" as the type of station house questioning at issue in Miranda. *Howes*, 565 U.S. at 509.

For all of these reasons, the Defendant's motion to exclude his statement should be denied.

## VI.   Expert Witnesses and Scientific Evidence

Defense counsel also moves to exclude the testimony of two Government witnesses: William Swift and Austin Funk. Defense counsel's first argument is that the Government cannot put forth a "fact" and "expert" witness, and specifically references *United States v. Garcia*. 752

F.3d 382 (4th Cir. 2014).  However, the Fourth Circuit has specifically recognized that such "hybrid" witnesses are allowed.  *United States v. Smith*, 919 F.3d 825, 836–39 (4th Cir. 2019).  The *Garcia* case involved an agent who was the monitor during a wiretap investigation, but also heavily involved in that investigation.  Her testimony at trial was about her personal knowledge and involvement in the case, which included speaking with coconspirators and cooperators in the case. But she was also noticed as an expert witness to decode language used during conversations.  *Id*. at 387.  The Court found in this case that the agent failed to adequately explain her methodology for decoding language during the calls and may have.  Instead the Court believed that in many instances, the agent used her personal knowledge of the case (e.g. information she learned from cooperators) to guide her interpretations of the conversations she was questioned about.  *Id.* at 395.

That is not the case here.  Mr. Funk's expert disclosure notices counsel that Mr. Funk, a Firearms and Explosives Services Specialist with the ATF's Firearms and Explosives Import Branch, "will testify in capacity as a fact witness, identifying and explaining the relevant importation paperwork where necessary.  As a part of that testimony, he will explain the process through which machine guns are imported into the United States and the paperwork required to be submitted.  To the extent that testimony is 'expert' in nature, the summary of that testimony" is detailed further in the notice.  Gov. Exh. 3.

Mr. Swift's expert disclosure notices counsel that Mr. Swift, a Branch Chief with the ATF's National Firearms Act Division, "is anticipated to be largely educational and pedagogical in nature.  He is rendering no opinions based on the particular facts of this case.  Instead, based on his experience as a Specialist with the Government Support Branch ("GSB"), Specialist Swift will testify generally to the process by which government agencies and licensed dealers obtain

and transfer machine guns.  Based on his extensive firearms training and experience, Specialist Swift will also testify to the capabilities and uses of several machine guns."  Gov. Exh. 4.

Mr. Swift and Mr. Funk will testify about the ATF process by which machineguns are imported into the United States and transferred within the United States.  ATF Forms 2, 3, 5, 6, 6A, and the use of law letters in that process.  Their testimony will be based on their review of the evidence in this case, and their knowledge, training, and experience in these processes. Though both Mr. Funk and Mr. Swift are knowledgeable about the case, they did not participate in the interview of witnesses, cooperators, and are not being to asked to provide any type of interpretation regarding in the evidence in this case.

Defense counsel's second argument is that neither Mr. Swift nor Mr. Funk have presented any methodology, conclusions, and have no personal knowledge about the facts in this case.  This is incorrect.  The Government in both disclosures states that there will be limited expert opinion offered by both Mr. Swift and Mr. Funk.  Unlike a DNA expert or even a firearms expert who has to offer detailed explanations at arriving at certain conclusions, both witnesses' testimony will educate the jury with their specialized knowledge about technical processes and procedures within the ATF, as well as some limited testimony about machine guns.  Under Fed. R. Evid. 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

On the other hand, under Fed. R. Evid. 701 a lay witness may provide opinion testimony,

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

It is also important to note that there is a fine line between lay and expert testimony. *United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006). *See also United States v. Ayala–Pizarro*, 407 F.3d, 25, 28 (1st Cir.2005) (noting that "[t]he line between expert testimony under Fed.R.Evid. 702 ... and lay opinion testimony under Fed.R.Evid. 701 ... is not easy to draw") (internal quotation marks omitted). "Certainly it is possible for the same witness to provide both lay and expert testimony in a single case." Fed. R. Evid. 701, Advisory Committee Notes, 2000 Amendments.

The testimony by Mr. Swift, detailed in Gov. Exh. 4, will be about law enforcement purchases of machine guns, and what forms need to be filed by law enforcement, the manufacturer, and the licensed dealer. He will also provide testimony about the typical use of machine guns by military and law enforcement agencies. Further, based on his training, knowledge and experience, Mr. Swift will provide testimony about the sizes, variants, calibers and shapes of machine guns. Further Mr. Swift will provide limited testimony on how a magazine-fed machine gun fires ammunition, and also how a belt-fed machine gun fires ammunition. Gov. Exh. 4. As is detailed in his curriculum vitae, Mr. Swift's testimony is based on a 14-year career with the ATF and extensive training and experience with different types of firearms, including machine guns. Gov. Exh. 5. However, much of Mr. Swift's testimony will

be considered lay testimony.    Defense counsel does not specifically attack in what way Swift's testimony is somehow improper other than generally arguing that his testimony would somehow prejudice and confuse the jury.  Defense counsel's argument is that the notice lacks methodology and conclusions.  The reason for that is because with the exception of his limited testimony about the capabilities of machine guns, much of his testimony will not involve his expert opinion.

Similarly, Mr. Funk's testimony will be based on his specialized knowledge of the importation of machine guns.  His knowledge, training, and experience comes from four years with the ATF as a Firearms and Explosives Specialist.  *See* Gov. Exh. 6.  That specialized knowledge permits Mr. Funk to provide the testimony that it has noticed in is Rule 16(a)(1)(G) disclosure.  *See* Gov. Exh. 3.  There are no specific arguments regarding Mr. Funk's testimony. Mr. Funk is qualified to offer, as demonstrated in his CV, the limited expert opinion in this case. Therefore, this argument should fail.

The Defendant's third argument to exclude the testimony of both Mr. Funk and Mr. Swift are that they do not have any personal knowledge and/or information on the facts of this case. Again, this argument quickly fails because both witnesses have reviewed the ATF Forms and law letters in this case.  They both have a sufficient basis to testify regarding the evidence in this matter.

## VII.    Interviews, Reports, or Statements of State Witnesses

In the introductory paragraph of Section VII, defense counsel requests that the Court not use before the jury any interview, audio, written report, or statement of any witness. As previously stated, the Government does not intend to introduce into evidence any written reports of any of its witnesses but reserves the right to refresh the recollection of a witness under  Fed. R. Evid. 612.  However, defense counsel goes on to list a few physical items that the

Government may introduce as evidence.  Specifically, in a section labeled "Disclosure #4", the government will address the admissibility of:

      b.      Materials provided on USB by N.A.
      d(x)    ATF evidence log
      d(xi)   ATF photo log by SA Petrella
      d(xii)  ATF photos of "seized evidence"
      d(xiii) ATF photos from SSW

*See* Def. Mot., p. 17.

Defense counsel also references these items, which he also raised in Sections VIII and IX.  The Government will address these items in those sections.

  e.      Emails obtained from the Frederick County Sheriff's Office

      j.      ATF Form 2
      k.     ATF Form 3 & Law Letter
      l.      ATF Form 6 & Law Letters
      m.    ATF Form 6A & Law Letters
      n.     All Law Letters, copies and duplicates
      o.     All Sheriff Jenkins e-mail records and analysis
      p.     Disclosure #4: all business records of TMGN

First, addressing materials provided on USB by N.A.  Defense counsel does not address which specific documents it seeks to exclude.  Further, the Government is still deciding on which documents it intends to introduce at trial.  However, the Government only intends to admit documents that N.A. obtained while employed by the Machine Gun Nest ("TMGN").  Some of these documents are handwritten ones but the majority of which are documents that were kept in the ordinary course of business at TMGN, that will be authenticated by N.A.  Those documents would be admissible under Fed. R. Evid. 803(6). Most of the documents provided by N.A. included information about the rentals of the various firearms, including the machine guns.  This information is relevant to the case at hand as it tends to prove the motive for scheme in this

case—that Defendant Krop sought to obtain these machine guns because they were highly profitable for TMGN.  Accordingly, these documents in a general sense should be admissible and defense counsel's motion should be denied.

Next in addressing the ATF evidence log, ATF photo log by SA Petrella, ATF photos of "seized evidence", and ATF photos from SSW, the Government notes that all of these items were created by members of the ATF during the search warrant at TMGN.  At the heart of this case are the law letters and the machine guns, which are captured by the evidence log, the photo log, and photographs, that defense counsel seeks to exclude.  These items of evidence are relevant in this matter as they will show to the jury the items that were seized from TMGN on May 25, 2022.  These are especially relevant as to Count 5 of the Indictment related to the possession of the machineguns by the Defendant.  The evidence log and the photolog are also admissible hearsay under both the business records exception, under Fed. R. Evid. 803(6) and under past recorded recollection, under Fed. R. Evid. 803(5).  These are records regularly maintained by members of the ATF when conducting search and seizure warrants, so there is a clear record of what items were collected during the search warrant, meeting the requirements under Fed. R. Evid. 803(6).  Furthermore, witnesses would testify that these records were made during the course of the search warrant, when the matter was fresh in the witness's mine and accurately reflects the witness' knowledge, meeting the requirements under Fed. R. Evid. 803(5).  Accordingly, defense motions should be denied.

## VIII.   Law Letters and Recorded Statement of Sheriff Chuck Jenkins

The five (5) specific "Law Letters"[1] to which Defendant refers in Part VIII, page 17 of his motion, ECF 33, were submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), as attachments to ATF Forms 3, 5 or 6.  These "Law Letters" are used by ATF in the consideration of applications relevant to the transfer, possession and/or importation of machineguns.  ATF maintains the forms and law letters in its database in the regular course of its responsibility to regulate the transfer, possession and importation of machineguns.  The law letters Defendant seeks to are relevant to Count 1 as they are identified as part of the Overt Acts specified in Paragraph 19. a., b., c., d., and e.  The law letter dated April 10, 2018, is relevant to counts 2, 3, and 4, because it related to the machineguns referenced in those counts.  Finally, to the extent a false and fraudulent law letter was used by Krop to come into possession of any one of the seven (7) machineguns listed in Count 5, the letter would likewise be relevant to that count.

These law letters were obtained by ATF investigators from the ATFs own system of records.  As noted above, one of the many functions of ATF is to regulate machineguns.  Accordingly, it maintains the ATF Forms 3, 5, and 6—along with attachments thereto—in the course of its regularly conducted activities.  As Defendant's counsel has advised undersigned Government counsel there will be no stipulations from the Defendant, the Government will have a witness capable of sponsoring these documents as official business records of the ATF, and thus admissible pursuant to Fed. R. Evid. 803(6)(B).

---

[1] Law letters, as they are commonly known, are also referred to as "demo" letters (for demonstration) and "sample" letters as they are submitted for authority under the "dealer sales sample" exception to the general prohibition on the transfer, possession and importation of machineguns.

In addition to his claim that these documents violate the Rules of Evidence and cannot be authenticated, Defendant protests that their use, reference, admission or other discovery to the jury will "outrageously" prejudice him.  First of all, most evidence introduced by the Government is prejudicial to a defendant—that is why it is submitted.  This case is about the illegal transfer and possession of machineguns primarily through the use of false and fraudulent law letters.  Machineguns are a subject about which most people acknowledge a legitimate authority of the United States government to regulate and oversee.  Presenting documentation that references machineguns and how they came to be transferred, possessed, and/or imported is, in and of itself, hardly outrageously prejudicial.  In fact, standing alone, absent any other evidence reflecting that the documents were false and fraudulent in their submission, they are not prejudicial at all.

Accordingly, this motion is without merit and should be denied without the necessity of any hearing.

## IX.     E-Mails of COO TMGN and Sheriff Jenkins Excluded

Defendant also seeks to preclude the admission of emails between Sheriff Jenkins, the putative author of the allegedly false and fraudulent law letters, and an employee of The Machinegun Nest ("TMGN").  During its investigation, the government obtained by Grand Jury Subpoena, from the Sheriff's Office for Frederick County, Maryland, a variety of its records, including emails, relating to the department's acquisition, possession, transfer and demonstration of machineguns.  This included emails to and from Sheriff Jenkins to TMGN employees.  These records are similarly maintained by the department in the course of its regularly conducted activities and are admissible pursuant to Fed. R. Evid. 803(6)(B).

To the extent the government obtained any emails from the records of TMGN, it would have been pursuant to a lawfully executed search warrant, and the emails and other records would have been in the files of TMGN, and similarly admissible pursuant to Fed. R. Evid. 803(6)(B). If the emails or other communications were extracted from computer systems/devices, the government would authenticate this material in accordance with Fed. R. Evid. 902(14).

In summary, the Defendant seems to think that if he simply protests that the evidence to which he objects is highly or outrageously prejudicial, it will get traction with this Court. That simply is not the standard for admissibility and this Motion should likewise be denied.

**CONCLUSION**

For the foregoing reasons, the Defendants' pretrial motions should be denied.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
        Christine Goo
        P. Michael Cunningham
        Assistant United States Attorney

14

## **CERTIFICATE OF SERVICE**

I hereby certify that this filing was served on defense counsel via ECF electronic filing.

Exhibit 1, an audio recording, will be sent by first-class mail to defense counsel and hand-

delivered to Chambers for the Honorable Stephanie A. Gallagher.

By:\_\_\_\_/s/_____
      Christine Goo
      Assistant United States Attorney